FILED
1997 DEC 10 PM 1:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **QUINTEZ WILSON,** | ] |
| Plaintiff(s), | ] |
| vs. | ]  CV 97-N-1932-S |
| **JEFFERSON COUNTY SHERIFF'S DEPARTMENT, et al.,** | ] |
| Defendant(s). | ] |
| **OMAR BERRY,** | ] |
| Plaintiff(s), | ] |
| vs. | ]  CV 97-N-1933-S |
| **JEFFERSON COUNTY SHERIFF'S DEPARTMENT, et al.,** | ] |
| Defendant(s). | ] |

ENTERED
DEC 10 1997

## Memorandum of Opinion

**I.   Introduction.**

The plaintiffs in these consolidated cases, Quintez Wilson ("Wilson") and Omar Berry ("Berry"), bring this action pursuant to 42 U.S.C. § 1983 ("section 1983") and pursuant to state law for false arrest and false imprisonment; malicious prosecution; assault and battery; and negligence and wantonness. *See generally Complaint* and *First Amendment to Complaint.* Defendants are the Jefferson County Sheriff's Department ("Sheriff's Department"), Jefferson County ("County"), and T.A. Salter ("Salter"), a law enforcement officer for the Sheriff's Department. The amended complaint alleges that Mr. Salter is sued

18

in both his individual and official capacities as to the state law claims, but does not allege the capacity or capacities in which Mr. Salter is sued under section 1983. The court will assume that Mr. Salter is sued in both his individual and official capacities here.

The matter is currently before the court on the motion to dismiss filed by defendant Salter on August 11, 1997; the motion to dismiss filed by defendant Jefferson County Sheriff's Department on August 11, 1997; and the motion to dismiss filed by Jefferson County on September 10, 1997. The motions have been briefed by the parties and are ripe for decision. Upon due consideration, the motions will be granted.

## II.    Allegations of the Complaint.

The plaintiffs allege in their complaint and amended complaint that on or about July 27, 1995, defendant Salter, a sergeant on the Jefferson County police force, unlawfully arrested and imprisoned the plaintiffs or, at a minimum, caused the plaintiffs to be unlawfully arrested and imprisoned on charges of capital murder. *First Amendment to Complaint* at ¶3. As the basis for their claims, the plaintiffs assert they were initially arrested and held in custody based solely on the statements made to Mr. Salter and other law enforcement officials by a "young female." *First Amendment to Complaint* at ¶7(b). Just prior to the plaintiffs' scheduled trial, the plaintiffs contend they were released from custody and the criminal charges were dropped because the only evidence linking them to the underlying murder was the statement of the young female, whose credibility had become questionable when she had testified under oath in the criminal trial that she had lied about the involvement of the plaintiffs in the underlying murder. *First Amendment to*

2

*Complaint* at ¶7(b). The plaintiffs further assert that Mr. Salter "always had reasons to disbelieve the young female or that, during the course of plaintiffs' incarceration, . . . came to realize that the young female had been untruthful." *Id.*

Relying substantially upon these alleged facts, the plaintiffs aver that Mr. Salter maliciously prosecuted the plaintiffs without probable cause. *First Amendment to Complaint* at ¶4. Moreover, the plaintiffs claim that, by handcuffing the plaintiffs in the course of an illegal and unlawful arrest and detainment, Mr. Salter committed an assault and battery on the plaintiffs, falsely imprisoned the plaintiffs, and performed these acts by engaging in negligent and wanton conduct. *First Amendment to Complaint* at ¶¶ 6-8.

Finally, plaintiffs assert only generally that they are entitled to relief under section 1983.

### III.  **Standard for Motion to Dismiss.**

For purposes of ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must take the allegations of the complaint as true and construe them in a manner most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A complaint may be dismissed when the allegations demonstrate that the plaintiff does not have a claim. *Bruce v. Wade*, 537 F.2d 850, 852 (5th Cir. 1976); *Hepperle v. Johnston*, 544 F.2d 201 (5th Cir. 1976).

## IV. Discussion.

### A. Claims Against the Jefferson County Sheriff's Department.

In its motion to dismiss, the Sheriff's Department argues that it is due to be dismissed as to the plaintiffs' state law claims and claims asserted under section 1983 because it is not a legal entity subject to suit. *Jefferson County Sheriff's Department's Motion to Dismiss* at 1-2 (citing *King v. Colbert County, Alabama*, 620 So. 2d 623, 626 (Ala. 1993) (holding that county sheriff's department is not a legal entity subject to suit); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (holding that "the Jefferson County Sheriff's Department is not a legal entity and, therefore, is not subject to suit or liability under section 1983"). The plaintiffs concede as much in their brief. *See Quintez Wilson's and Omar Berry's Joint Memorandum Brief in Response to the Motions to Dismiss* at 2-3. Accordingly, the Sheriff's Department, and all claims asserted against it, will be dismissed from this action with prejudice.

### B. Claims Against Jefferson County.

Jefferson County relies upon the recent United States Supreme Court decision in *McMillian v. Monroe County, Alabama*, 117 S. Ct. 1734 (1997), for the proposition that an Alabama county has no authority in the area of law enforcement and, thus, a sheriff does not exercise county authority and is not a county policymaker when engaged in a law enforcement capacity. *See Jefferson County's Motion to Dismiss for Failure to State a Claim* at 2. As a result, Jefferson County contends that, under *McMillian*, the county cannot be liable under section 1983 for any constitutional torts inflicted by the sheriff in the area of law enforcement. *See id.* The plaintiffs concede this point. *See Quintez Wilson's and*

4

*Omar Berry's Joint Response to Jefferson County's Motion to Dismiss* at 1. Yet, remarkably, the plaintiffs urge the court to ignore Supreme Court precedent, to follow the *McMillian* dissent, and to deny Jefferson County's motion to dismiss. *See id.*

While the court's respect for Justices Ginsburg, Stevens, Souter, and Breyer is unbounded, it must necessarily follow the majority decision of the *McMillian* Court and not the minority opinion. As a result, Jefferson County, and all claims asserted against it, will be dismissed with prejudice.

### C.     Claims Against Mr. Salter.

#### 1.     State Law Claims - Sovereign Immunity.

As to the state law claims contained in their original complaint, the plaintiffs concede that Mr. Salter enjoys sovereign immunity under article I, section 14 of the 1901 Alabama Constitution as to the state law claims. *See Quintez Wilson's and Omar Berry's Joint Memorandum Brief in Response to the Motions to Dismiss* at 3. Section 14 states that "the State of Alabama shall never be made a defendant in any court of law or equity." Under Alabama law, both sheriffs and deputy sheriffs are considered executive officers of the state, immune from suit under section 14.[1] *See Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987); *see also Parker v. Williams*, 862 F.2d 1471, 1475 (11th Cir. 1989). As an initial matter, therefore, the plaintiffs' state law claims for negligent or wanton conduct will be dismissed with prejudice.

---

[1] Alabama law affords section 14 immunity to state officers in both their official and individual capacities. *See Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989); *Gill v. Sewell*, 356 So. 2d 1196, 1198 (Ala. 1978).

5

As to their amended complaint, on the other hand, the plaintiffs argue that the state law claims against Mr. Salter for intentional or malicious wrongdoing are not shielded by sovereign immunity. *See id.* For support, the plaintiffs rely upon the Eleventh Circuit opinion in *McMillian v. Johnson*, 88 F.3d 1554, 1572-73 (11th Cir. 1996), where the court ruled "that the defense of sovereign immunity does not bar suits against state officers for torts committed willfully, maliciously, and outside the scope of their authority" and concluded that, if a sheriff was being sued in his individual capacity, "the Alabama Supreme Court would [not] *sub silentio* excuse sheriffs from its oft-repeated rule that sovereign immunity does not protect an official from liability for willful or malicious wrongdoing." Relying upon this language, the plaintiffs' amended complaint asserts claims for intentional or malicious wrongdoing by Mr. Salter. *See generally First Amendment to Complaint*.

However, as the defendants point out, the Eleventh Circuit subsequently re-visited its holding on this point and deleted the *McMillian* language upon which the plaintiffs rely to assert their state law claims against Mr. Salter. *See Defendant's Reply Brief in Response to Plaintiffs' Joint Memorandum Brief* at 2-3 (citing *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996)). While noting that Alabama's appellate courts have not clearly answered the question whether Alabama sheriffs are protected by sovereign immunity under section 14 of the Alabama Constitution, even when sued in their individual capacities for malicious or intentional wrongdoing, the Eleventh Circuit recognized that a recent decision from its own court, *Tinney v. Shores*, 77 F.3d 378 (11th Cir. 1996), had held that Alabama law shields a deputy sheriff, via the sovereign immunity doctrine, against claims based upon intentional torts. *McMillian*, 101 F.3d at 1365 (citing *Tinney*, 77 F.3d at 383).

6

Indeed, under *Tinney*, the Eleventh Circuit held that "[u]nder Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are *absolutely immune* from suit when the action is, in effect, one against the state." *Tinney*, 77 F.3d at 383 (citing *Phillips v. Thomas*, 555 So. 2d 81, 83 & n.3 (Ala. 1989)) (emphasis added). Applying the *Tinney* rationale, the Eleventh Circuit in its amended opinion in *McMillian*, concluded that the plaintiff's state law claims against a county sheriff, even though such claims asserted malicious or intentional wrongdoing, were barred by sovereign immunity. *McMillian*, 101 F.3d at 1365. Accordingly, the plaintiffs' remaining state law claims in the present action for intentional or malicious wrongdoing by Mr. Salter will be dismissed with prejudice.[2]

## 2. Federal Law Claims Against Mr. Salter in His Official Capacity - Eleventh Amendment Immunity.

As noted *supra*, the plaintiffs do not specifically allege in their complaint the capacity or capacities in which Mr. Salter is sued under section 1983.[3] Thus, the court has assumed, construing the allegations in the light most favorable to the plaintiffs, that Mr.

---

[2] At this juncture it is appropriate to recognize the court's concern that plaintiffs' counsel may have come dangerously close to violating Rule 11 of the Federal Rules of Civil Procedure. By directing the court's attention to the Eleventh Circuit's holding in *McMillian v. Johnson*, 88 F.3d 1554 (11th Cir. 1996), and arguing that the plaintiffs' state law claims against Mr. Salter were viable, counsel for the plaintiffs arguably failed to make the required inquiry to determine that the state law claims were "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." FED. R. CIV. P. 11. In a similar situation, where a court sanctioned counsel under Rule 11 for failing to cite adverse authority in the controlling jurisdiction mandating the opposite result argued, the court stated:
> The duty of candor is a necessary corollary of the certification required by Rule 11. A court has a right to expect that counsel will state the controlling law fairly and fully; indeed, unless that is done the court cannot perform its task properly. A lawyer must not misstate the law, fail to disclose adverse authority (not disclosed by his opponent), or omit facts critical to the application of the rule of law relied on.

*Jorgenson v. County of Volusia*, 625 F. Supp. 1543, 1548 (M.D. Fla. 1986) (quotations and citations omitted). Accordingly, counsel for the plaintiffs is directed to review the requirements of Rule 11, Fed. R. Civ. P., prior to filing any other pleading, motion or other paper in this court.

[3] In their complaint, the plaintiffs only generally allege "claims for relief to which [they are] entitled under 42 U.S.C. § 1983." *Complaint* ¶¶ 10-11.

7

Salter is sued in both his individual and official capacities here. The defendants contend that the Eleventh Amendment bars suit against a deputy sheriff, like Mr. Salter, when such claims are asserted under an official capacity theory of liability. *See Defendants' Memorandum Brief in Support of Motions to Dismiss* at 5.

Indeed, the Eleventh Amendment bars suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Eleventh Amendment, however, does not protect state officials acting in their official capacities from suit for injunctive relief. *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 n.2 (11th Cir. 1994). Eleventh Amendment immunity applies not only in actions against the state itself but also in actions brought against a "state agency or instrumentality." *Id.* The rule, however, does not apply to instances in which the state waives such immunity or Congress specifically abrogates it. With regard to section 1983 claims, however, the State of Alabama has not waived and Congress has not abrogated Alabama's Eleventh Amendment immunity. *See Gorman v. Roberts*, 909 F. Supp. 1493, 1502-03 (M.D. Ala. 1995).

Most important to the analysis here is that sheriffs and deputy sheriffs in Alabama represent the state of Alabama when executing their law enforcement duties. *See Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1526-27 (11th Cir. 1990); *cf. McMillian v. Monroe County, Alabama*, ___ U.S. ___, 117 S. Ct. 1734, 1737 (1997) (holding that Alabama sheriffs represent the state of Alabama, not the county in which they acted as law enforcement officials). In *Carr*, the Eleventh Circuit concluded that "[under Alabama law], a deputy is legally an extension of the sheriff. If the deputy's acts are generally considered the acts

8

of the sheriff, it is logical that those acts should also enjoy immunity covering the sheriff's own acts." *Carr*, 916 F.2d at 1526 (citing *Mosely v. Kennedy*, 17 So. 2d 536, 537 (Ala. 1944)).

Under the guidance of *Carr* and because the plaintiffs concede that the Eleventh Amendment bars their section 1983[4] official capacity claims against Mr. Salter, all such claims will be dismissed with prejudice.

### 3. Federal Law Claims Against Mr. Salter in His Individual Capacity - Qualified Immunity.

Section 1983 of Title 42 of the United States Code creates a mechanism for recovering monetary damages from and securing injunctive relief against governmental actors and entities whose actions under color of state or local law deprive a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. In their amended complaint, the plaintiffs seek damages based on allegations that Mr. Salter "violated the plaintiffs' constitutional rights if he allowed [the plaintiffs] to remain incarcerated after concluding that the young female's testimony could never be presented at trial and after knowing that there was no other evidence pointing to the plaintiffs' participation in the subject matter."[5] *First Amendment to Complaint* at 5.

Defendant Salter contends that he is immune from the plaintiffs' constitutional section 1983 individual capacity claims under the well-established doctrine of qualified

---

[4] *See Quintez Wilson's and Omar Berry's Joint Memorandum Brief in Response to the Motions to Dismiss* at 4.

[5] The court points out that the plaintiffs' artful language here, stating that Mr. Salters violated their constitutional rights "*if*" he inappropriately incarcerated them, is not a true allegation. *See also supra* note 2.

9

immunity. *See Defendants' Memorandum Brief in Support of Motion to Dismiss* at 6-7. If the plaintiffs' complaint fails to "state a violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known'," then Mr. Salter is "immune from liability and even from trial." *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied sub nom, Deutcsh v. Oladeinde*, 507 U.S. 987, 113 S. Ct. 1586, 123 L. Ed. 2d 153 (1993). In this vein, the Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); *see also Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. A government official first must demonstrate that "'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Rich*, 841 F.2d at 1563-64 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)). If the defendant satisfies this burden, the plaintiffs must then show either that the official lacked good faith or that the official's actions "'violated clearly established constitutional law'" or a federal statute. *Id.*

Under the second prong, the court must determine whether the applicable law was clearly established at the time of the challenged action. This is determined by reference

to decisions of the Supreme Court of the United States and the Court of Appeals for the Eleventh Circuit. *D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n. 6 (11th Cir. 1995); *Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir. 1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir. 1994), and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994); *see also Cofield v. Randolph County Comm'n*, 90 F.3d 468, 470 (11th Cir. 1996).

As emphasized in *Lassiter*, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violated federal law in the circumstances." *Id.*; *see also Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)(holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). The Eleventh Circuit has warned that plaintiffs must not be permitted "to discharge their burden by referring to general rules and to the violation of abstract 'rights.'" *Id.* at 1150. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994)).

In their amended complaint, the plaintiffs assert only generally that Mr. Salter "violated the plaintiffs' constitutional rights if he allowed [the plaintiffs] to remain incarcerated after concluding that the young female's testimony could never be presented

11

at trial and after knowing that there was no other evidence pointing to the plaintiffs' participation in the subject matter." *First Amendment to Complaint* at 5. The court finds it difficult to discern how this can be construed, even in the light most favorable to the plaintiffs here, to state a claim upon which relief can be granted against Mr. Salter.

At the outset, it must be pointed out that the Eleventh Circuit has substantially tightened the pleading requirements in a section 1983 action, stating that in cases where qualified immunity is implicated, "some factual detail is necessary, especially if we are to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Oladeinde*, 963 F.2d at 1485; *cf. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) (stating it is "impossible to square the heightened pleading requirement with the liberal system of notice pleading set up by the Federal rules" and that in section 1983 claims, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later"). Under the Eleventh Circuit's heightened pleading standard, actions against governmental officials must be pleaded "with sufficient precision to put defendants on notice of the nature of the claim and enable them to prepare a response and, where appropriate, a summary judgment motion on qualified immunity grounds." *Malone v. Chambers County Bd. of Comm'rs*, 875 F. Supp. 773, 791 (M.D. Ala. 1994) (quoting *Brown v. Frey*, 889 F.2d 159, 170 (8th Cir. 1989), *cert. denied*, 493 U.S. 1088, 110 S. Ct. 1156, 107 L. Ed. 2d 1059 (1990)).

The court finds that the plaintiffs simply have not provided enough detail to allow Mr. Salter to prepare an adequate response to their section 1983 claim(s). The only

"factual detail," *Oladeinde*, 963 F.2d at 1485, is that Mr. Salter "violated the plaintiffs' constitutional rights if he allowed [the plaintiffs] to remain incarcerated after concluding that the young female's testimony could never be presented at trial and after knowing that there was no other evidence pointing to the plaintiffs' participation in the subject matter." *First Amendment to Complaint* at 5. The plaintiffs do not explain what specific constitutional right was violated by Mr. Salter's alleged conduct nor does the amended complaint provide Mr. Salter with the slightest idea of pertinent defenses to their section 1983 claims against him. And, despite acknowledging their duty to do so, the plaintiffs have failed to cite for the court a controlling case, decided before the events at issue, that establishes a constitutional violation on materially similar facts as those alleged by them. *See Quintez Wilson's and Omar Berry's Joint Memorandum Brief in Response to the Motions to Dismiss* at 4-5. As a result, the plaintiffs have failed to raise a genuine issue of material facts regarding whether defendant Salter, by the conduct alleged against him, violated any clearly established federal right as to either of them. Accordingly, the plaintiffs' section 1983 claims will be dismissed with prejudice.

## V.  Conclusion.

Accordingly, the defendants' motions to dismiss will be granted. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 9th of December, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

13